Jay W. VANDERTOLL and Dr. Donald J. Vandertoll, Appellants,

v.

COMMONWEALTH of Kentucky, Transportation Cabinet, Appellee,

and

Commonwealth of Kentucky, Department of Transportation, Bureau of Highways, Appellant,

v.

Elmo Martin and Martha Martin, His Wife, Appellees,

and

Don C. Kelly, as Secretary of Transportation, and Transportation Cabinet, Commonwealth of Kentucky, and Jerry Anglin, as Commissioner of Highways, Appellants,

v.

Everett R. Thompson, Jr., and Deborah T. Harris, as Co-Executors of the Estate of Everett R. Thompson and Denny Moore and Southside Real Estate Investors, Inc., Appellees.

No. 2001–SC–0256–DG, 2001–SC–1065–DG, 2001–SC–1066–DG.

Supreme Court of Kentucky.

May 22, 2003.

Rehearing Denied Aug. 21, 2003.

Daniel Potts Cherry, Thomas E. Powell, II, Greenbaum, Doll & McDonald, PLLC, Louisville, Counsel for Appellants, Jay W. Vandertoll and Dr. Donald J. Vandertoll.

Mary R. Harville, Lynn Katrin Fieldhouse, Reed, Weitkamp, Schell & Vice, PLLC, Louisville, Counsel for Appellee, Commonwealth of Kentucky, Transportation Department.

Randall Gardner, Jeffrey A. Cross, Borowitz & Goldsmith, PLC, Louisville, Counsel for Appellant, Commonwealth of Kentucky, Department of Transportation, Bureau of Highways.

R. Dale Warren, Louisville, Counsel for Appellees, Elmo Martin and Martha Martin, His Wife.

Randall Gardner, Jeffrey A. Cross, Borowitz & Goldsmith, PLC, Louisville, Counsel for Appellants, Don C. Kelly, as Secretary of Transportation, and Transportation Cabinet, Commonwealth of Kentucky, and Jerry Anglin, as Commissioner of Highways.

Charles F. Wilson, Jr., Pikeville, Counsel for Appellees, Everett R. Thompson, Jr., and Deborah T. Harris, as Co–Executors of the Estate of Everett R. Thompson.

John R. McGinnis, McBrayer, McGinnis, Leslie & Kirkland, Greenup, Counsel for Appellees, Denny Moore and Southside Real Estate Investors, Inc.

Opinion of the Court by Justice STUMBO.

This is a consolidated appeal from two Court of Appeals' opinions dealing with the same issues of law. The main issues on appeal are: (1) whether the application of Kentucky Revised Statute (KRS) 416.670 to condemnations occurring more than eight years [1] prior to the statute's amendment in 1980, constitutes an impermissible retroactive application of that statute; (2)

---

1. KRS 416.670 gives former owners the right to repurchase their condemned property if the Cabinet fails to develop the property within eight years of condemnation.

792

what is the applicable statute of limitations period for claims arising under KRS 416.670; and (3) whether the Transportation Cabinet's[2] failure to give condemnees actual notice of their right to repurchase their land pursuant to KRS 416.670, at its original purchase price, tolls the statute of limitations for bringing such an action to recover the property. We granted discretionary review and heard consolidated oral arguments on *Transportation Cabinet v. Thompson*, 2001–SC–1066–D, and *Department of Transportation v. Martin*, 2001–SC–1065–D. The appeals were taken from a single Court of Appeals' Opinion addressing both cases. We also granted discretionary review to *Vandertoll v. Transportation Cabinet*, 2001–SC–00256–D, which was decided by a separate panel of the Court of Appeals. We will briefly describe the facts of each case below. In the interest of judicial economy, we will address the common issues of law with one opinion of this Court.

## FACTS

### Transportation Cabinet v. Thompson

In 1978, the Transportation Cabinet began condemnation proceedings against Everett and Mary Thompson to acquire over six acres of their land for use in the construction of U.S. 119 in Pike County. In 1983, the parties reached a settlement agreement in which the Thompsons transferred 4.869 acres to the Cabinet in exchange for the property's fair market value of $75,000. In 1988, pursuant to the settlement agreement, the Cabinet notified the Thompsons by letter that a portion of their land had not been used in the construction of U.S. 119 and offered to sell the .89 acre tract back to the Thompsons for its appraised value of $106,000. Mr.

Thompson requested that he be advised of his rights regarding the repurchase of his land. The Cabinet responded only by restating the prior offer and Mr. Thompson tendered a deposit on the tract under protest that the Cabinet had not given him the proper right of first refusal, per their agreement, as he was only paid $75,000 for nearly five acres of land ($15,403.57 per acre) in the original condemnation action. After negotiations between the parties broke down, the Cabinet ultimately sold the disputed .89 acre tract to a third party. This cause of action began when the Thompsons filed suit in Pike County Circuit Court in November of 1993 seeking to enjoin the Cabinet from transferring the deed to the third party and to have the property conveyed to them at its fair market value at the time of condemnation, $13,709.18, pursuant to KRS 416.670. The Pike Circuit Court found in favor of the Transportation Cabinet and held that KRS 416.670 could not be applied retroactively to the Thompsons' claim, as the condemnation had occurred before that statute's amendment in 1980. The Court of Appeals reversed and held that KRS 416.670 did give the Thompsons a cause of action. We affirmed the Court of Appeals in *Kelly v. Thompson*, Ky., 983 S.W.2d 457 (1998), and held that such was not an impermissible retroactive application of that statute, thus giving the Thompsons a right to repurchase their property at the price the Cabinet initially paid for it. We remanded to Pike Circuit Court with instructions to allow the Thompsons to ·exercise their right of redemption under KRS 416.670. Accordingly, the circuit court directed the Cabinet to sell the land to the Thompsons at the price the Cabinet originally paid for it. The Cabinet appealed and the Court of Appeals affirmed the Pike Circuit Court.

**2.** The Transportation Cabinet was previously known as the Department of Transportation.

For clarity's sake, we will refer to both as the "Cabinet."

This appeal followed. We affirm the Court of Appeals' Opinion for the reasons set forth below.

### Department of Transportation v. Martin

The Martins' property was condemned in 1979, at which time they were paid a total of $102,500. The Martins sought to enforce their right of redemption pursuant to KRS 416.670, and instituted this action in the Jefferson Circuit Court in 1999 after our opinion in *Kelly, supra,* was rendered in late 1998. The Jefferson Circuit Court dismissed the Martins' complaint as untimely and held that the redemption provision of KRS 416.670 was governed by the five-year statute of limitations contained in KRS 413.120. The Court of Appeals, in a consolidated opinion with the Thompson case, held that although the five-year statute of limitations applied, the limitations period does not begin to run until the Cabinet gives the previous landowners actual notice of their right to repurchase the property at the same price that the Cabinet paid for it initially, pursuant to KRS 416.670. We agree and affirm for the reasons set forth below.

### Vandertoll v. Transportation Cabinet

In 1962, the Cabinet instituted condemnation proceedings against the Vandertolls in order to acquire 26.59 acres of their land for use in the construction and maintenance of Interstate 64. The Cabinet took possession of the land by deed in April of 1967 and the Vandertolls were paid $141,790 ($5,332.45 per acre). Subsequently, the Cabinet declared a portion of the land to be surplus property, including 12.858 acres deemed Parcel 224A, the subject of this dispute. Apparently, over the years the Cabinet and the Vandertolls have unsuccessfully tried to negotiate a repurchase of the parcel. The Vandertolls filed suit in Jefferson Circuit Court in May of 1995 seeking to assert their rights pursuant to KRS 416.670. Initially, the circuit

court dismissed the complaint, and the Court of Appeals held the case in abeyance pending our decision in *Kelly, supra.* Subsequently, the Court of Appeals reversed and remanded to the circuit court for further proceedings in light of our decision in *Kelly.* On remand, and in accordance with the holding of *Kelly, supra,* the Jefferson Circuit Court ruled that the Vandertolls' claim was still barred because the "triggering event" for KRS 416.670 was the expiration of the eight years in which the Cabinet has to develop the condemned property, and in order for the statute to not have retroactive application, the triggering event must have occurred after KRS 416.670's amendment in 1980. The trial court found that the Vandertolls' land was condemned in 1967 and the eight years in which the Cabinet had to develop the land expired in 1975. The Vandertolls' right of redemption against the Cabinet, pursuant to KRS 416.670, was not established until 1980; therefore, to allow the Vandertolls the benefit of the amended statute would be to give that statute retroactive application. On appeal, the Court of Appeals affirmed the Jefferson Circuit Court's summary judgment for the Cabinet. We agree for the reasons set forth below.

### RETROACTIVE APPLICATION OF KRS 416.670

Prior to 1980, KRS 416.670 specifically exempted condemnations by the Cabinet from prior landowners' rights of redemption. The legislature, however, deleted this exemption from the language of KRS 416.670 in 1980. KRS 416.670 now reads in pertinent part:

(1) Development shall be started on any property which has been acquired through condemnation within a period of eight (8) years from the date of the deed to the condemnor or the date on which

the condemnor took possession, whichever is earlier, for the purpose for which it was condemned. The failure of the condemnor to so begin development shall entitle the current landowner to repurchase the property at the price the condemnor paid to the landowner for the property. The current owner of the land from which the condemned land was taken may reacquire the land as aforementioned.

In *Kelly, supra*, this Court held that the Thompsons, whose land was condemned prior to 1980, could avail themselves of the right of redemption provided in KRS 416.670 without such constituting a retroactive application of the statute in violation of KRS 446.080(3)[3]. Specifically, we held that "[i]t is the failure of the condemning authority to begin development within eight years, and not the condemnation, which entitles the current owner the opportunity to repurchase such surplus property." *Kelly*, 983 S.W.2d at 459. Therefore, since the Thompsons' land was condemned in 1978, their right of redemption did not arise until eight years later in 1986. Since this occurred after the statute was amended in 1980, the Thompsons are free to avail themselves of the rights conferred upon them by KRS 416.670. Likewise, the Martins' land was condemned in 1979 and therefore, their right of redemption did not arise until 1987, seven years after KRS 416.670 was amended. They too have a cause of action against the Cabinet under the statute. The Vandertolls, however, do not benefit from KRS 416.670's amendment because their land was condemned in 1967, thus their opportunity to repurchase their land accrued in 1975. At that time, KRS 416.670 contained a specific exemption for

condemnations originated by the Cabinet. Since the statute was not applicable to the Cabinet in 1975, the Vandertolls cannot seek to enforce its provisions upon the Cabinet; therefore, they do not have a cause of action under KRS 416.670. Accordingly, we hold that to allow landowners whose rights to repurchase their condemned property are triggered before the statutory amendment of KRS 416.670 in 1980 (by the expiration of eight years without development), would be to allow retroactive application of that statute in violation of KRS 446.080(3).

## STATUTE OF LIMITATIONS

Each of the condemnees argues that the fifteen-year statute of limitations set forth in KRS 413.010 should apply to claims brought under KRS 416.670, rather than the five-year period found in KRS 413.120(2). The courts below that reached the statute of limitations issue held that KRS 413.120(2) should govern because a claim arising under KRS 416.670 is "[a]n action upon a liability created by statute." KRS 413.120(2). KRS 413.120(2) states that a five-year statute of limitations applies to such claims "when no other time is fixed by the statute creating the liability."

The condemnees contend that KRS 413.010, dealing with actions for the recovery of real property, governs because their claims involve a *right* to repurchase real property and not a *liability* created by statute. We disagree. The Court of Appeals in the Vandertoll case explained it best:

Here, the right of the current landowner to repurchase and the obligation of the condemnor to develop the property within eight years are both created by the statute, which is entitled, "Limitations expressly so declared."

**3.** KRS 446.080(3) states that "[n]o statute shall be construed to be retroactive, unless

on condemnation power—Rights of current landowner." Without the statute, neither would exist .... We hold that this is an action upon a liability created by statute, and the appropriate period of limitations is the five year statute in KRS 413.120(2).

This Court has many times held that rights created by statute were governed by the five-year statute of limitations in KRS 413.120(2). *See Whittaker v. Brock*, Ky., 80 S.W.3d 428 (2002) (holding that KRS 413.120(2) is applicable to an action to enforce an award of workers compensation benefits); *Ammerman v. Board of Education of Nicholas County*, Ky., 30 S.W.3d 793 (2000) (holding that a civil rights claim for sexual discrimination was barred by KRS 413.120(2)); *Kentucky Commission on Human Rights v. Owensboro*, Ky., 750 S.W.2d 422, 423 (1988) (holding that "[t]he rights of the movants were created by KRS 344.230" and that "[t]herefore, since these rights are created by a statute which provides no limitation of its own, the 5–year statute of limitations found in KRS 413.120(2) should be applied."). *Pike v. Harold (Chubby) Baird Gate Co.*, Ky.App., 705 S.W.2d 947 (1986), held that KRS 413.120(2) governed a claim for wrongful discharge against an employer. The court said, "[t]he essence of the tort alleged ... is an interference with a right, in this case a statutory right, not a bodily injury. Thus the statute of limitations appropriate to this action is KRS 413.120(2), the five-year statute of limitations for actions upon a 'liability created by statute ....'" *Id.* at 948. Furthermore, KRS 413.010, governing the recovery of real property, has historically applied to common law claims of adverse possession. *See Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, Ky., 15 S.W.3d 727 (2000); *Great Western Land Management v. Slusher*, Ky., 939 S.W.2d 865 (1996); and *Appalachian Regional Health-*

*care, Inc. v. Royal Crown Bottling Co.*, Ky., 824 S.W.2d 878 (1992). In the cases *sub judice*, the landowners' rights to repurchase their property and the Cabinet's obligation to offer any surplus property back to the condemnees after eight years, were both created solely pursuant to statute. Therefore, we conclude that the five-year statute of limitations contained in KRS 413.120(2) governs claims arising pursuant to KRS 416.670.

We find no merit in the Vandertolls' argument that no statute of limitations should apply to their claim under KRS 416.670. Moreover, this issue is moot in light of the fact that we have found the Vandertolls to not have a claim under the statute.

## TOLLING OF THE STATUTE OF LIMITATIONS

 The condemnees argue that even if the five-year statute of limitations applies, the limitations period does not begin to run, or is essentially tolled, because the Cabinet failed to give the condemnees actual notice of their right to repurchase their land at its original condemnation price. We agree. KRS 416.670(2) specifically mandates that the Cabinet "shall notify the current landowner of the provisions of subsection (1) of this section." This language clearly places an affirmative duty upon the Cabinet to notify landowners of their redemption right if their property was not developed within the eight-year time period allotted to the Cabinet. We will not commence a lengthy discussion on the definition of "shall." KRS 446.080(4) states that "[a]ll words and phrases shall be construed according to the common and approved usage of language ...." "In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command and ... must be given a compulsory meaning."

Black's Law Dictionary 1233 (5th ed.1979). "If the words of the statute are plain and unambiguous, the statute must be applied to those terms without resort to any construction or interpretation." *Terhune v. Commonwealth*, Ky.App., 907 S.W.2d 779, 782 (1995) (quoting *Kentucky Unemployment Insurance Commission v. Kaco Unemployment Insurance Fund, Inc.*, Ky. App., 793 S.W.2d 845, 847 (1990)). Shall means shall.

The statutorily mandated notice requirement is a condition precedent to the *accrual* of the landowners' cause of action under KRS 416.670. The failure of the Cabinet to comply with this mandate therefore effectively delayed the running of the limitations period on such claims. *See* 51 Am. Jur.2d *Limitation of Actions* § 111 (1970) ("As a general proposition, if a condition precedent to a right of action exists, whether it is a demand and refusal or some other act or contingency, the cause of. action does not accrue nor does the statute of limitations begin to run until the condition is performed"). In other words, KRS 416.670 created a potential right in favor of the condemnees (and likewise, a conditional liability against the Cabinet) that *arose* at the expiration of eight years without development. However, this potential right and conditional liability could not *accrue*, or become absolute, until the Cabinet offered the land back to the condemnees at its original purchase price, thereby allowing the condemnees to exercise their right pursuant to the statute, or decline to do so. *See Gregg v. Middle States Utilities Co.*, 228 Iowa 933, 293 N.W. 66 (1940).

■ The Cabinet argues that in order to find the condemnees' causes of action timely, we would have to either impermissibly extend the discovery rule to actions resulting from land condemnations, or in the alternative, rule that exceptional circumstances exist warranting that the Cabinet be equitably estopped from asserting a limitations defense against the condemnees. The Cabinet is correct when it states that the doctrine of equitable estoppel should only be used against government agencies in exceptional circumstances. *Weiand v. Board of Trustees of Kentucky Retirement Systems*, Ky., 25 S.W.3d 88, 91 (2000). However, we believe that it is not necessary to resort to the principles of equity in order to find the condemnees' actions timely. We find this to be more an issue of strict compliance with the plain wording of the statute that requires the Cabinet to give condemnees notice of their right of redemption. Until such notice is given by the Cabinet, the condemnees are unaware of their statutory right of redemption and consequently, the statute of limitations does not begin to run on their claims until this condition precedent is satisfied. *Forwood v. City of Louisville*, 283 Ky. 208, 214, 140 S.W.2d 1048, 1051 (1940) ("The statute of limitations begins to run from the time when a complete cause of action accrues .... Where a party's right depends upon the happening of a certain event in the future, the cause of action accrues and the statute begins to run *only* from the time when the event happens.")

Our ruling also does not necessarily implicate the discovery rule. Kentucky case law has previously limited the extension of the discovery rule primarily to causes of action arising from recovery of stolen property, medical or professional malpractice and latent illness or injury resulting from exposure to harmful substances. *Roman Catholic Diocese of Covington v. Secter*, Ky.App., 966 S.W.2d 286 (1998). The discovery rule acts to delay the accrual of a cause of action until the plaintiff discovers, or should have reasonably discovered his injury. *Id* at 288. This, in effect, allows injured plaintiffs their day in court

when the nature of their injury is such that the injury itself is not readily discoverable. However, in the cases *sub judice*, KRS 416.670 places the burden of notification upon the Cabinet, thereby relieving the condemnees of the responsibility to investigate whether the Cabinet has developed their land for its intended purpose. The clear and unequivocal language of the statute states that the Cabinet is charged with making the condemnees aware of their rights under KRS 416.670; therefore, its failure to effect such notice delays the running of the statute of limitations on claims arising pursuant to the statute until notice is properly given.

## PUBLIC POLICY

■ The Cabinet argues that this state's policy of promoting prompt prosecution and ultimate resolution of claims will be subverted by delaying or tolling the statute of limitations if proper notice has not been given to the condemnees. While it is true that statutes of limitation serve to bar stale claims by favoring prompt resolution of those claims, *Natural Res. and Envtl. Prot. Cabinet v. Ky. Ins. Guaranty Ass'n.*, Ky.App., 972 S.W.2d 276, 280 (1997), the legislature has evidenced an intention to place surplus condemned property back into the hands of the original owners through its enactment of KRS 416.670. *Miles v. Dawson*, Ky., 830 S.W.2d 368, 370 (1991). This legislation also advances policy concerns regarding the state's involvement in the land brokerage business. *Id.* The Cabinet will not be unduly burdened by our ruling because only those landowners whose land was condemned from July 15, 1972, through the effective date of the amendment to the statute on July 15, 1980, can avail themselves of the right of redemption. The statute does not cover those landowners whose condemnation occurred more than eight years prior to the effective date of the amendment removing the exemption for the Cabinet. Likewise, it is presumed that the Cabinet has previously addressed any condemnations occurring after the amendment in 1980, as it does not dispute the statute's applicability to condemnations occurring after that time. "The power to condemn property is an awesome power." *Id.* Accordingly, we hold that subjecting the Cabinet to possible additional claims that might have arisen in an eight-year period would not be in contravention of this state's public policy.

■ The Cabinet also contends that the Court of Appeals erred in the Thompson and Martin decisions by not reaching the issue of whether the Cabinet had begun "design on highway projects pursuant to KRS Chapter 177" with regards to the subject properties. The Thompsons counter that this issue has never been raised throughout the entire litigation and the Cabinet does not direct us to where in the record that this issue is preserved, and we will not search the record on appeal to make that determination. CR 76.12(4)(c)(iv); *Robbins v. Robbins*, Ky. App., 849 S.W.2d 571 (1993). In fact, we are unaware if the Cabinet has ever contended that it actually had begun design on highway projects at any level of litigation with the Thompsons or Martins. We also note the somewhat disingenuousness of the Cabinet's argument regarding the Thompsons' property, as it specifically stated "that [the] .89 acre of the property will not be needed for the operation or maintenance of U.S. 119" in a letter to Mr. Thompson dated July 1, 1988, that offered to resell the property at its appraised value of $106,000. We find it strange that the Cabinet would offer to resell the property

if it were, in fact, considering it for use in a highway project.

## CONCLUSION

For the reasons stated above, the decisions of the Court of Appeals in *Transportation Cabinet v. Thompson,* 2000–CA–002083, *Department of Transportation v. Martin,* 2000–CA–000640, and *Vandertoll v. Transportation Cabinet,* 1999–CA–002941, are affirmed.

LAMBERT, C. J.; COOPER, GRAVES, JOHNSTONE and KELLER, JJ., concur.

WINTERSHEIMER, J., concurs in result only.